UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL ANTHONY HARRIS,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM MUNIZ,<br><br>Respondent. | No. 2:16-cv-1482-JAM-GGH P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding with a petition for a writ of habeas corpus pursuant to 28. U.S.C. section 2254 pro se and in forma pauperis.

*Introduction and Summary*

Petitioner was given a sentence of 135 years as a result of having been convicted of nine counts of aggravated lewd conduct with a minor. ECF No. 2 at 1. His conviction, rendered after trial in the Sacramento Superior Court, id., was appealed to the Third District Court of Appeals which affirmed his conviction with modifications to his sentencing on June 30, 2105, id. at 2, see also People v. Harris, Case No. C075446, reproduced below and filed by Respondent as Lodged Document [hereafter "Lod. Doc."] No. 13. The California Supreme Court denied his Petition for Review without opinion. Lod. Doc. No. 16. Petitioner seeks habeas to reverse his convictions on grounds of denial of due process and of his Sixth Amendment rights, ECF No. 2 at 4, and ineffective assistance of both trial and appellate counsel. ECF No. 2 at 6.

1

As Respondent has noted, petitioner's issues are somewhat difficult to decipher in that he initially asserted four errors that are filtered through a conclusionary ineffective assistance of counsel rubric, but briefed for them most part as claims of trial court error. Grounds One and Two overlap and contain separate issues. Two of the claims are unexhausted, but petitioner has expressly abandoned those two issues--Grounds Three and Four--in the traverse. The undersigned understands the issues to be:

    1.    Retroactive Application of People v. Soto and Harmless Error Finding (Counts 1-9)[1];

    2.    Apprendi Sixth Amendment Violation Concerning Finding of Probation Ineligibility; Separate Occasions (Counts 1-7) (see footnote 1);

    3.    Confrontation Denial (Abandoned);

    4.    Prosecutor's Use of Perjurious Testimony (Counts 4-7) (Abandoned, but discussed on the merits);

Because the legal grounds for each claim would dispose of the ineffective assistance claims, i.e., counsel is not ineffective for not raising non-meritorious arguments, the undersigned will not discuss the ineffective assistance grounds separately except with respect to the perjured testimony claim. For the reasons set forth herein, the petition should be denied in its entirety.

////

---

[1] Petitioner made no challenge in his Petition with respect to Counts 8 and 9, and specifically referenced *seven* counts. His direct review appeal referenced Counts 8-9 on the Soto issue within the body of a headlines section listing Counts 1-3. However, with respect to the Sixth Amendment issue (whether a judge or jury should make several fact findings underlying the sentencing), only Counts 1-7 were referenced. See "Defendant contends the trial judge, in imposing one strike sentences of 15 years to life on counts *one through seven*, unconstitutionally found these offenses were committed on '"separate occasions."' (Emphasis added.). Nevertheless, Respondent briefs Counts 8 and 9 comprehensively in the Answer as if they had been part of the state appellate decision. Petitioner picks up on this and writes his Traverse as if he had challenged Counts 8 and 9 all along. The undersigned will discuss the exhausted claims regarding Counts 1-9 on the Soto issue as raised in the text of the appellate decision, but with respect to the Sixth Amendment issue will only discuss Counts 1-7 as raised in the Petition and state Court of Appeal decision, and will not recognize an attempted amendment to the Petition in the Traverse given the unexhausted status of the first two Grounds with respect to Counts 8 and 9.

*Facts*

The underlying facts in this case are best explained by the Third District Court of Appeal's resolution of the petitioner's appeal. People v. Paul Anthony Harris, 2015 WL 3981810 (Cal. App. 2015) (Court's footnotes at end of quote). Because the appellate court's discussion is important for the explication of state law, it is included here as well in its entirety.

> A jury convicted defendant Paul Anthony Harris in November 2013 of nine counts of aggravated lewd conduct on three children under the age of 14, and found true the specified circumstance of multiple victims under the one strike sentencing law. (Pen.Code, §§ 288, subd. (b)(1), 667.61, former subd. (e)(5) [now subd. (e)(4) ].)1 Sentenced to nine consecutive one strike sentences of 15 years to life, defendant appeals. (§ 667.61, subd. (b).) Defendant's offenses occurred in the time frame of 2005 to 2006, and 2010.
>
> Defendant contends that *People v. Soto* (2011) 51 Cal.4th 229 (*Soto*)—which held in part that victim consent cannot negate the duress element of aggravated lewd conduct—constituted an unforeseeable expansion of statutory criminal liability that cannot be applied retroactively to him as a matter of due process. We find defendant's contention raises an arguable point, but ultimately is not helpful to defendant as to his sentence.
>
> Defendant also contends the trial court unconstitutionally imposed seven of the one strike sentences without a jury finding that the offenses occurred on "separate occasions." We disagree with this contention.
>
> We shall make a minor modification to the judgment, and affirm as modified.
>
> FACTUAL BACKGROUND
>
> 2005–2006 Incidents
> Defendant moved in with his girlfriend D.J. in October 2005. While living with her, defendant molested D.J.'s nine-year-old daughter A.J. as many as 20 times. In the first incident, A.J. woke up to find herself naked, and a naked defendant lying on top of her. Defendant had sex with A.J. vaginally and orally, at times grabbing her head, pulling it closer, forcing her to continue, and causing her to cry. He told her he would kill her and her mother if she told anyone. These incidents comprised counts one through three.
>
> The day after the first incident, defendant called A.J. and her friend M.E., a seven-year-old boy, into defendant's bedroom where he showed them a pornographic

3

movie. He then took them into A.J.'s room where he instructed A.J. and M.E. to have sex mimicking the movie. Defendant also orally copulated M.E.'s penis and had M.E. do the same to him. These acts constituted counts four through seven.2

Late in 2006, M.E. reported to an adult friend of A.J.'s mother that he (M.E.) had witnessed defendant molesting A.J. The friend reported this to A.J.'s mother, but she did not call the police because she was afraid Child Protective Services would take A.J. away.3 A.J. first told her mother about these incidents in December of 2009.

2010 Incident

In March of 2010, D. Doe (D.D.), a 12–year–old girl, was staying the night at the house of her aunt, who was then dating defendant. D.D. woke up in the middle of the night to find defendant holding her down, inserting his finger into her vagina, and attempting to put his tongue in her mouth. After the incident, when D.D. threatened to tell someone, defendant threatened to kill her and her mother if she did. Frightened, D.D. did not report the incident to her mother, but several months later she confided in a friend. The friend reported the incident to D.D.'s mother who subsequently notified the police. These acts comprised counts eight and nine.

DISCUSSION

**I. *Soto*, Arguably, Is an Unforeseen Judicial Enlargement of Criminal Liability but This Does Not Help Defendant on the Facts Here**

Due process prohibits the retroactive application of a judicial enlargement of statutory criminal liability, if that enlargement is unexpected and indefensible in light of the law at the time of the conduct at issue. In other words, holding a defendant criminally liable for conduct that could not reasonably be anticipated to be prohibited violates due process. (*Bouie v. City of Columbia* (1964) 378 U.S. 347, 352–354 [12 L.Ed.2d 894, 899–900]; *People v. Crew* (2003) 31 Cal.4th 822, 853; *People v. Morante* (1999) 20 Cal.4th 403, 431.)

Here, defendant claims the trial court—in line with a 2011 judicial enlargement of statutory criminal liability in *Soto, supra*, 51 Cal.4th 229—violated due process with a particular jury instruction. That instruction concerned the aggravated lewd conduct charges against defendant in all nine counts (i.e., lewd conduct with a child under 14 by force, duress, menace, or fear of bodily injury—§ 288, subd. (b)(1) (hereafter section 288(b)(1) or aggravated lewd conduct). In line with Soto, but contrary to prior case law, the instruction stated, "It is not a defense that the child may have consented to the act." (Judicial Council of Cal.Crim. Jury Instns.

4

(Jan. 2006 rev.) CALCRIM No. 1111.)

Before proceeding any further, we note that a child under 14 cannot legally consent to sexual acts. (*Soto, supra*, 51 Cal.4th at pp. 233, 248, fn. 11 (maj. opn. of Corrigan, J.); see id. at p. 255 (conc. & dis. opn. of Werdegar, J.).) The question of consent implicated here by the challenged instruction is a narrower one: Can a child under 14 consent to an act so as to negate the element of duress required for section 288(b)(1), aggravated lewd conduct?

*Soto*, in 2011, in a 4–to–3 opinion, answered this narrower question, "no." (*Soto, supra*, 51 Cal.4th at p. 233.)

Before *Soto*, however, almost all the case law, beginning with a split decision from this court, *People v. Cicero* (1984) 157 Cal.App.3d 465 (*Cicero* ), had reasoned that consent is a defense to a charge of aggravated lewd conduct involving duress, menace, or fear of bodily injury. That is because victim consent is inherently inconsistent with the perpetrator's use of duress, menace, or such fear. And this was so, notwithstanding that the Legislature in 1981 had deleted the phrase "and against the will of the victim" from the language of the aggravated lewd conduct statute (then § 288, subd. (b)) that had stated, "by use of force, violence, duress, menace, or threat of great bodily harm, *and against the will of the victim* ...." (*Soto, supra*, 51 Cal.4th at pp. 233, 248 & fn. 12, italics added (maj. opn. of Corrigan, J.); id. at pp. 249–252 & fn. 3 (conc. & dis. opn. of Werdegar, J.); *Cicero, supra,* 157 Cal.App.3d at pp. 476–478, 481, 484–485.)

As *Cicero* explained, if the concept of violation of will is removed from the words "duress," "menace," and "threat," these words are left without substance. (*Cicero, supra*, 157 Cal.App.3d at p. 477.) Drawing from the law on rape, Cicero concluded that the Legislature's 1981 deletion of "against the will of the victim" was apparently designed to eliminate any requirement that the People prove resistance by the victim in a prosecution for aggravated lewd conduct. (*Cicero*, at pp. 480–481.)

The *Soto* majority, however, in 2011, was having none of the *Cicero* majority. (*Soto, supra*, 51 Cal.4th at pp. 241–244.) The *Soto* majority based its conclusion that victim consent is not a defense to aggravated lewd conduct on (1) the Legislature's 1981 deletion of "against the will of the victim" from the aggravated lewd conduct statute (former § 288(b) [now § 288(b)(1) ] ); (2) the view that this statute focuses on the defendant's wrongful conduct and not the victim's response to it; and (3) the legal incapacity of a child under 14 to consent to sexual relations. (Soto, at pp. 233, 241–244, 246, 248.) The *Soto* dissent of three, however,

5

continued to agree with the *Cicero* majority of two, on consent being a defense to aggravated lewd conduct involving duress, menace, or fear of bodily injury (formerly, threat of bodily harm). (*Soto*, at pp. 249–256 (conc. & dis. opn. of Werdegar, J.).)

Against this backdrop, *Soto* arguably constitutes an unforeseen judicial enlargement of section 288(b)(1) aggravated lewd conduct liability with respect to duress, menace, or fear of bodily injury. Consequently, it is arguable, as defendant contends, that the trial court erred in instructing the jury—in the aggravated lewd conduct context of duress—that consent is not a defense to such a charge.

If we assume, then, for the sake of argument that the trial court erroneously instructed on consent as to the duress element, the error is of constitutional dimension. The error is a due process violation involving a judicial enlargement of statutory criminal liability applied retroactively. Accordingly, the standard of harmless error is whether it can be said beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710–711].)

Counts One through Three
With respect to the counts involving A.J. (on her own, counts one through three) and D.D. (counts eight and nine), we think it can be said beyond a reasonable doubt that the error did not contribute to the verdict.

As for A.J., she testified, without dispute, that defendant grabbed her, forced her, caused her to cry, and told her he would kill her and her mother if she told anyone of the acts.

D.D.'s undisputed testimony echoed A.J.'s, in that defendant held her down and threatened to kill her and her mother if she told anyone, leaving D.D. very frightened.

Counts Four through Seven
We cannot say, however, beyond a reasonable doubt, that the assumed instructional error regarding consent, did not contribute to the verdicts on counts four through seven, which involved A.J. and M.E., and M.E. alone. M.E. denied that any oral copulation took place between himself and defendant, and M.E. stated that defendant did not force A.J. and M.E. to have sex. A.J. disputed M.E.'s account. And the friend of A.J.'s mother testified that M.E. told him that M.E. had witnessed defendant trying to penetrate A.J. and had heard defendant say he would kill M.E., A.J., and their parents if they told (M.E. himself did not testify to

6

witnessing any sexual touching between A.J. and defendant, and M.E. did not testify about any conversation with the friend of A.J.'s mother). Consequently, the assumed instructional error means the verdicts on counts four through seven for section 288(b)(1) aggravated lewd conduct cannot stand. What can stand, however, and what even defendant does not dispute, is that counts four through seven can be reduced to convictions for section 288, subdivision (a), nonaggravated lewd conduct (hereafter section 288(a) or nonaggravated lewd conduct) based on the evidence presented here.

That leaves the question of sentencing regarding these four reduced section 288(a) convictions (counts four through seven). Defendant was sentenced to four consecutive one strike terms of 15 years to life for these counts, based on the one strike specified circumstance of multiple victims. (§ 667.61, subd. (e)(4) [former subd. (e)(5) ].)

Under the current version of the one strike law, a simple violation of section 288(a) (nonaggravated lewd conduct) is an offense subject to the one strike enhanced term of 15 years to life (with the specified circumstance here of multiple victims). (§ 661.67, subds. (b), (c)(8), (e)(4).) However, under the one strike law in effect at the time defendant committed counts four through seven (between Oct. 2005 and Aug. 2006), a section 288(a) conviction was an offense subject to the one strike law, "unless the defendant qualifies for probation under subdivision (c) of Section 1203.066 [ (i.e., defendant is the natural parent of the child [or equivalent]; probation is in the best interests of the child; rehabilitation is feasible; defendant is removed unless the best interests of the child dictate otherwise; and no threat of physical harm—if all these conditions are met, the trial court has the discretion to grant probation) ]." (§ 667.61, former subd. (c)(7) [now subd. (c)(8) ], italics added; see § 1203.066, former subd. (c).)

Thus, under the one strike law in effect at the time of counts four through seven, a simple conviction for section 288(a) (nonaggravated lewd conduct) was not sufficient to trigger one strike eligibility; there also had to be a finding that the defendant did not qualify for section 1203.066, former subdivision (c) probation.

Probation
Here, the trial judge effectively found that defendant did not qualify for probation. At sentencing, the trial judge announced that even if defendant were eligible for probation under section 1203.066, the judge would not grant it because the acts disclosed a very high degree of cruelty, viciousness and callousness by someone in a position of trust, indicating a serious danger to society. (Cal. Rules of Court, rule 4.421.)

7

Citing the *Apprendi–Blakely* line of United States Supreme Court decisions that implement the constitutional right to a jury trial, defendant contends the finding of probation qualification must be made by a jury, not a judge.4 We disagree, for reasons we expressed in *People v. Benitez* (2005) 127 Cal.App.4th 1274 (*Benitez*).

As we prefaced in *Benitez*: Under the *Apprendi-Blakely* line, "any fact other than 'recidivism' that increases the punishment for an offense beyond the 'statutory maximum' (the maximum a trial court may impose on facts necessarily reflected in the jury verdict for the offense) must be the subject of a jury finding." (*Benitez*, supra, 127 Cal.App.4th at p. 1277.) Here, the jury found the "statutory maximum" punishment facts, as to counts four through seven, when it found, at a minimum, that defendant committed the one strike eligible offenses of section 288(a) nonaggravated lewd conduct as to those counts, and when it found the accompanying one strike specified circumstance of multiple victims. (§ 667.61, former subd. (e)(5) [now (e)(4) ].) And, as we concluded in *Benitez*, "Finding a defendant ineligible for probation is not a form of punishment, because probation itself is an act of clemency on the part of the trial court. [Citation.] Because a defendant's eligibility for probation results in a reduction rather than an increase in the sentence prescribed for his offenses, it is not subject to the rule of [*Apprendi-*]*Blakely*." (*Benitez*, at p. 1278.)

Accordingly, we shall modify the judgment to specify that defendant's convictions on counts four through seven are for violations of section 288(a) rather than for section 288(b)(1). Defendant's consecutive one strike sentence of 15 years to life for each of these four counts remains intact.

**II. A Jury Finding of "Separate Occasions" Is Not Constitutionally Required for One Strike Sentencing on Counts One Through Seven**

Defendant contends the trial judge, in imposing one strike sentences of 15 years to life on counts one through seven, unconstitutionally found these offenses were committed on "separate occasions." Defendant maintains, once again, that the *Apprendi–Blakely* line of United States Supreme Court decisions requires the jury to make this factual finding.5  We disagree.

At the time defendant committed counts one through seven, the one strike sentencing law of section 667.61, subdivision (g), stated as pertinent: "The [one strike] term ... shall be imposed on the defendant once for any offense or offenses committed against a single victim during a single occasion. If there are multiple victims during a single occasion, the [one strike] term ... shall be imposed on the defendant once for each separate victim...." (Stats.1998, ch. 936, § 9, p. 6876.)

8

We effectively rejected defendant's contention in *People v. Retanan* (2007) 154 Cal.App.4th 1219 (*Retanan*).

In line with *Retanan* 's reasoning, the "statutory maximum" punishment facts were established here, as required by *Apprendi–Blakely*, when the jury found him guilty in counts one through seven of an offense subject to the one strike law (§ 288(a) [nonaggravated lewd conduct] or § 288(b)(1) [aggravated lewd conduct] ) and found true the one strike specified circumstance of multiple victims (§ 667.61, subds. (b), (c), (e)).

And, as we concluded in *Retanan*, "Subdivision (g) [of section 667.61 (which provides the basis of defendant's contention regarding the finding of 'separate occasions') ], if it applied, would only act to reduce liability if defendant's culpability was less than the statutory penalty for his crimes. Mitigating the maximum statutory punishment does not fall within the rule of *Blakely* and *Apprendi*. The ... finding [by the trial judge in *Retanan*] that the subdivision (g) exception does not apply because the offenses are separate does not increase defendant's maximum sentence." (*Retanan, supra,* 154 Cal.App.4th at p. 1230, italics added.) Consequently, the *Retanan* trial judge's finding of "separate occasions" under the one strike sentencing scheme was constitutionally proper. The same can be said for the trial judge here.

Footnotes
1 Undesignated statutory references are to the Penal Code.
2 M.E. consistently denied that any oral copulation took place between himself and defendant. M.E. also testified that when defendant told him and A.J. to take off their clothes, defendant—whom M.E. thought of as an uncle—did so matter-of-factly rather than demandingly. According to A.J., however, M.E. was scared and crying when defendant told M.E. to suck defendant's penis, and also cried when defendant made M.E. have sex with A.J.
3 According to D.J., she was told about inappropriate touching but not about intercourse.
4 Apprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435]; Blakely v. Washington (2004) 542 U.S. 296 [159 L.Ed.2d 403].
5 See footnote 4, ante.
-----------------------------------------------------------

*AEDPA Legal Standards*

The statutory limitations of a federal court's power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. section 2254, as amended by AEDPA. The text of the statute reads as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

9

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 562 U.S. 86, 98 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication of state-law procedural principles to the contrary." Id. at 99, *citing* Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Harrington, supra*, at 101, *citing* Williams v. Taylor, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 101, *citing* Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 102. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does

not mean the state court's contrary conclusion was unreasonable." Id., *citing* Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2) factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1)—i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006). Thus even an erroneous conclusion or incorrect application of federal law is not enough to support a favorable habeas ruling – the conclusion or application must be *unreasonable* as defined here and the burden to make that showing is squarely on the petitioner. Hill v. Woodford, 2008 WL 5234726 *2 (E.D.Cal. 2008).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, at 102. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See *e.g*., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by an unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional

11

1 principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decisions. Id. at 8. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, if the state courts have not adjudicated the merits of the federal issue, no AEDPA deference is given; the issue is reviewed de novo under general principles of federal law. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2012). However, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 292 (2013).

*Discussion*

   A. Application of People v Soto

Petitioner first claims, as he did on appeal, that the interpretation of the sexual assault of minors law changed from the time he committed the acts to when the state supreme court decided People v. Soto, 51 Cal. 4th 229 (2011), i.e., that a child victim's consent cannot negate the duress element of aggravated lewd conduct. Previously, as discussed by the appellate court, California law had been interpreted to hold that consent could do so. The jury here was instructed pursuant to Soto.

Petitioner's issue here is a non-issue, insofar as the merits of the claimed error go, given that the state appellate court assumed and/or found Constitutional error pursuant to Bouie v. City of Columbia, 378 U.S. 347 (1964) (a change in the interpretation of law may not be applied to a criminal defendant if such interpretation could not have been reasonably anticipated). For Counts 1-3, the error was assumed and harmless error was found. For Counts 4-7, error was

assumed/found and determined to be not harmless. Petitioner could not ask this federal court in habeas jurisdiction to do more—the error was assumed or found by the state appellate court for all counts.

Thus, the only possible <u>Soto</u> issue involved the finding of harmless error for the first three counts. Harmless error in federal habeas is viewed through the prism of substantial and injurious harm pursuant to <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). <u>Davis v. Ayala</u>, 135 S.Ct. 2187, 2197-98 (2015). It is difficult to disagree with the Court of Appeal that evidence of alleged threats, threats to even kill the victim's mother, and forceful conduct, could constitute the required duress. Nothing substantially injurious occurred as a result of the potentially errant instruction.

For Counts 4-7, the Court of Appeal could not find the instruction about consent to be harmless, and the undersigned will not question this finding. However, the Court of Appeal was able to fashion a lesser conviction under state law—a conviction which did not require violence or duress. Except in conclusionary form, Petitioner does not appear to attack here the propriety of these (slightly) lesser convictions, nor the actual eligibility for a one strike sentence under state law, if the other criteria were met, <u>see</u> below, and the fact-on-the-merits that petitioner did not qualify for probation. To the extent he procedurally contests the finding of probation ineligibility, contending such a finding would be a violation of the Sixth Amendment if made by a judge, his claim is foreclosed by precedent and the lack of a defining Supreme Court case. That discussion is set forth in the next section.

B. <u>Sixth Amendment Sentencing Violation</u>

Petitioner argues that the trial court unconstitutionally imposed seven one-strike consecutive sentences without any finding by the jury that the offenses at issue occurred on "separate occasions." ECF 2 at 2, 4. California sentencing law, with its nearly annual, multiple changes (many times additions of sections and subsections), and its difficult-to-follow cross references together with its numerous exceptions to an otherwise generally applicable sentences, will not be parsed by the undersigned, as he is bound in the interpretation of California law by the statements of the California courts, including the exposition of law by the appellate courts in

petitioner's case. Bradshaw v. Richey, 546 U.S.74, 76 (2005).²

In this case, the Court of Appeal held that a one strike sentence of 15 years to life imprisonment was applicable to all California Penal Code section 288(b) offenses and the section 288(a) offenses (reduced from section 288(b) to section 288(a)), for which petitioner was found not to be eligible for probation. It appears that the one strike sentences would be consecutive if all counts took place on separate occasions and/or involved separate victims:

> [Section 667.61](i) For any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c), or in paragraphs (1) to (6), inclusive, of subdivision (n), the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims or involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6.

To the extent petitioner is arguing that a 15 years to life sentence for each singular count could not be imposed unless the jury found "separate occasions," he has misinterpreted the statute as that circumstance applies to consecutive sentencing, not the sentence applicable for each count. In any event, and even assuming the undersigned has misinterpreted state law and the appellate opinion in this case, petitioner would simply be disputing the application of state law.³

On the other hand, if petitioner is challenging, as a Sixth Amendment violation, the judge-made finding of probation ineligibility, therefore making him eligible for a 15 to life sentence for each of Counts 4-7, he cites no directly applicable Supreme Court case in the

---

² Suffice it to say that it is seemingly clear from present day language of Section 667.61 that the counts reduced to section 288(a) offenses (subsection (c)(8)) possessed the "one or more" criteria of subsection (e) (multiple victims) required by subsection (b). The section 288(b) offenses (Counts 1-3) were eligible for the 15 years to life since petitioner had been found guilty by a jury of a multiple victim finding for offenses "in the present case." All that was required to have all section 288 offenses eligible for the indeterminate terms sentence was a jury finding "in the present case" of multiple victims, and a finding of multiple victims for each count is not necessary. See Section 667.61(e)(4). The Court of Appeal found that the law extant at the time petitioner committed the acts was essentially the same as present day law save for the fact that a 15 years to life sentence could not be imposed on section 288(a) offenses if petitioner had been found eligible for probation.

³ The court cannot find any circumstance in subdivision (e) of section 667.61 which sets forth "separate occasions" as a circumstance which will qualify a defendant for a penalty of 15 years to life.

probation context, an AEDPA prerequisite.  Neither <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 471 (2000); <u>Blakely v. Washington</u>, 542 U.S. 296, 300 (2004), nor <u>Alleyne v. United States</u>, 570 U.S. 99, 108 (2013), constitute binding authority that probation ineligibility, even if a factor making one eligible for the statutory maximum, must be decided by a jury.  To so extrapolate these Supreme Court cases to the probation ineligibility context would constitute a refinement of Supreme Court authority that only the Supreme Court may make.  <u>See</u> AEDPA discussion <u>supra</u>. In addition, those courts which have analyzed the probation ineligibility issue in the context of petitioner's crimes have not found any valid extrapolation possible.  <u>Dominguez v. Spearman</u>, 2017 WL 6508981 (E.D. Cal. 2017); <u>Brooks v. Schwartz</u>, 2008 WL 561191 (C.D. Cal. 2008); <u>Maupin v. Garcia</u>, 2005 WL 1367066 *4-5 (E.D. Cal. 2005); <u>Uribe v. Knowles</u>, 2005 WL 2253801 (N.D.Cal. 2005).

Finally, if petitioner is generally disputing any judge fact finding for a determination of consecutive sentencing, arguing that a jury must find the facts which make consecutive sentencing possible, his claim has been foreclosed by <u>Oregon v. Ice</u>, 555 U.S. 160 (2009), which held precisely to the contrary.

    C. <u>Prosecution Use of Perjured Testimony</u>

        *1.*    *Background Facts*

Petitioner characterizes the conflict of testimony between two of the victims, A.J. and M. E., as perjured testimony exploited by the prosecutor to secure a conviction.  ECF No. 2 at 5.  As a threshold matter it is important to note that the events involving A.J. and M.E. occurred in 2005 and 2006.  Lod. Doc. 13 at 2.[4]  At that time A.J. was 9 years old and M.E. was 7 years old. <u>Id.</u>  The events involving the third child involved in the allegations against petitioner, but not the perjury claim of petitioner, D.D., occurred in 2010 when D.D. was 12 years old.  <u>Id.</u> at 3.  The trial in which all three children testified was held in 2013 when A.J. was 17 years old, RT at 762:3-24, and M.E. and D.D. were 15 years old.  <u>Id.</u> at 917:20-918.3.[5]  Thus, there was a lapse of

---

[4] Lodged Document 13 is the Third District Court of Appeal denial of petitioner's appeal.
[5] Lodged Document No 7 contains the transcript of the testimony given at trial.  Citations will be to transcript page numbers rather than the lodged document numbers.

15

1 7 or 8 years between the actual behaviors related to A.J. and M.E. for which petitioner was charged and tried and the testimony given in court by these victims occurred after they had progressed from young children to teenagers.

Petitioner did not exhaust this claim in his round of appeals and petitions in the State courts but respondent argues that the claims can be addressed despite the exhaustion requirement found in section 2254 insofar as the claims are meritless, see <u>Cassett v. Stewart</u>, 406 F.3d 614, 623-624 (9th Cir. 2005) *citing* 28 U.S.C. 2254(b)(2). For this reason the court has not acceded to petitioner's statement in his Traverse that he is willing to dismiss these claims as unexhausted. ECF No. 21 ¶4 at 6:16-18.

2.   *Petitioner's Argument*

In his Traverse at ECF No.2, page 5, petitioner argues that A.J. made false statements that were contradicted by the trial testimony of M.E., i.e., whether she and M.E. were forced to have sex in front of the defendant and whether the defendant molested M.E. M.E. denied these allegations during trial. Linked to these allegations is the claim of insufficient representation by trial counsel for "allowing" A.J's testimony in light of M.E's denials. In essence M.J. told investigators one thing in 2007 which was not in conflict with what A.J. told them, and then at trial said he was just trying to cover A.J. when he made his earlier statements and, basically, none of those statements were true. It is petitioner's (puzzling) position that by putting M.E. on the witness stand and questioning him about the earlier statements he gave to investigators, which clearly supported the prosecution's case, and continuing to argue in favor of A.J.'s testimony, which also supported the prosecution case, even knowing M.E. would recant most, if not all, testimony against petitioner on the witness stand, the prosecutor had suborned perjury. ECF No. 2 at 5.

3.   *Standard to Be Applied*

In <u>Napue v. Illinois</u>, 360 U.S. 264 (1959) the United States Supreme Court stated that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. . ." The principle that a State may not knowingly use false evidence including false testimony, to obtain a tainted conviction, implicit in

16

1  any concept of ordered liberty, does not cease to apply merely because the false testimony goes
2  only to the credibility of the witness. 360 U.S. at 269. The Ninth Circuit Court of Appeals has
3  held that in order to prevail on a claim based on perjury, "petitioner must show that (1) the
4  testimony . . . was actually false, (2) the prosecution knew or should have known that the
5  testimony was actually false, and (3) that the false testimony was material." United States v.
6  Zumo-Arce, 339 F.3d 886, 889 (9th Cir. 2003).

       4.      *Discussion*

When M.E testified that his early statements were, in the main, fabrications designed only to support A.J.'s accusations regarding defendant's abuse of her, but were untrue both as to what he saw with regard to A.J.'s treatment as well as with regard to statements of his own abuse, i.e., he denied being subjected to any molestation whatsoever. The credibility issue is discussed above in terms of the jury's duty to resolve any such testimonial conflicts and discussion will not be replicated here. It is important to note, however, that it is the behavior of the prosecutor which is at issue here. That is, the prosecutor, knowingly calling the witness who he knew had changed his testimony from the evidence given to investigators years before, invited perjury when he allowed M.E. to testify in contradiction. See e.g. Lod. Doc. No. 7 at 1572:20-1577:13, 1604:4-1662:13, 1843:22-24. The most important thing about these and other statements made at the trial that reflected M.E.'s rejection of his earlier investigative statements-- who stated that he had decided he no longer wished to lie, 1110:5-12, and that his earlier statements were made only to "back-up" A.J. in her claims, id. at 1102:20-22:04:13-- is that M.E.'s testimony from the witness stand *per* se served the interests of the *defendant*, not those of the *prosecutor*. To proffer such defendant-favorable contradiction, although done in hopes of bolstering the prosecution case, if the jury were to believe the former statements, does not fit the perimeters of the definition of perjury at all; petitioner is entitled to no relief on this ground. Rather it falls squarely within the realm of contradicted testimony subject to jury scrutiny and resolution.

       5.      *Insufficient Representation of Counsel*

This is a related claim that petitioner admits was not raised in his prior appeals and thus has not been exhausted. For the same reason stated above this court, however, will address the

17

1  issue as one that is amenable to resolution in this action despite the failure to exhaust the claim.

2  The test for demonstrating ineffective assistance of counsel is set forth in Strickland v.
3  Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the
4  circumstances, counsel's performance fell below an objective standard of reasonableness.
5  Strickland, 466 U.S. at 688.  To this end, the petitioner must identify the acts or omissions that
6  are alleged not to have been the result of reasonable professional judgment. Id. at 690.  The
7  federal court must then determine whether in light of all the circumstances, the identified acts or
8  omissions were outside the wide range of professionally competent assistance. Id.  "We strongly
9  presume that counsel's conduct was within the wide range of reasonable assistance, and that he
10 exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg,
11 898 F.2d 695, 702 (9th Cir.1990) (*citing* Strickland at 466 U.S. at 689).

12 Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693.
13 Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional
14 errors, the result of the proceeding would have been different." Id. at 694.  A reasonable
15 probability is "a probability sufficient to undermine confidence in the outcome."  Id.

16 For [petitioner] to succeed, however, he must do more than show that he would have
17 satisfied Strickland's test if his claim were being analyzed in the first instance, because under §
18 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment,
19 the state-court decision applied Strickland incorrectly. See Williams v. Taylor, 529 U.S. 362,
20 411 (2000).  Rather, he must show that the Court of Appeal applied Strickland to the facts of his
21 case in an objectively unreasonable manner.  Since there has been no state court opinion on this
22 subject, this court will apply the foregoing standard in the first instance.

23 Petitioner asserts that the trial counsel impermissibly "allowed testimony by A.J."
24 regarding events she described involving M.E. despite the fact that M.E. denied those facts in his
25 trial testimony.  ECF No. 2 at 5.  This formulation makes no sense in context.  A.J. was a
26 prosecution witness.  Petitioner's counsel did not call A.J. to testify, the prosecutor did.  Thus all
27 petitioner's counsel could do was attempt to undermine A.J.'s testimony through cross
28 examination.

A.J.'s testimony for the prosecution begins at RT 762:3 and the direct examination concludes at RT 798:25. Petitioner's counsel's cross-examination begins at RT 810:28 and concludes at RT 873:4. In the cross-examination defense counsel points out inconsistencies between A.J.'s direct testimony and M.E.s testimony, i.e., that she first told police about the molestation by defendant after she had been caught having sex with a boy in her cousin's home, and points out several inconsistencies between her present testimony and her earlier testimony to which A.J. repeatedly states she doesn't remember her earlier statements, and when objections are raised to her questioning she points out she is not trying to shift any blame, she is exposing the jury to inconsistent statements from this critical witness. In other words, counsel did what she could do to undercut the witness's credibility. When cross-examining M.E. counsel shifted course and drew out all of the recantations made by M.E. to emphasize them to the jury, had him testify to how defendant treated children in the complex, and generally attempted, through M.E., to paint a totally different character for defendant through M.E.'s newly minted testimony.

In the circumstances of the case, and after a reading of the entire record, there would appear to be little if anything else petitioner's counsel could do to undermine the credibility of A.J. whose testimony was so injurious to the client, and highlight the testimony of M.E. whose testimony was clearly much more helpful to defendant. Further, mere inconsistencies in the testimony of witnesses is not perjury, but rather two conflicting and irreconcilable stories told at two different times, and it must be left to the jury to decide which version is true and whether any reasonable doubt about truth or falsity remains that causes them to disregard any testimony and if so which testimony. United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th Cir. 1995); Thompson v. Lizarrga, 2018 WL 2010434 *12 (E.D.Cal. 2018); Newsome v. Paramo, 2018 WL 953153 *7 (E.D.Cal. 2018).

In light of the foregoing this court can discern no deficiency in counsel's performance that would permit a finding of insufficient representation.

Petitioner also points to what he perceives to have been appellate counsel's failure to raise the ineffective assistance of trial counsel on appeal by pointing out the failure to preclude A.J.'s trial testimony at trial as the ineffective assistance argument raised as to this counsel.

Given the discussion of trial counsel's performance above, to have even attempted to raise this argument before the appellate courts would have undermined the credibility and reliability of counsel in the eyes of the courts.

*CONCLUSION*

In light of the foregoing IT IS HEREBY FOUND AND RECOMMENDED that:

1. The petition for habeas corpus should be denied;
2. The Clerk of the Court should close this case.
3. No Certificate of Appealability (COA) should issue.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Eastern District of California Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Id. Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: November 27, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE